```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
DAVID RUKAJ                                      MEMORANDUM AND ORDER
                                                 19-CV-1744 (KAM)

                    Plaintiff,

    -against-



COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

---------------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Plaintiff David Rukaj ("plaintiff" or "claimant") appeals the final decision of the Commissioner of the Social Security Administration ("SSA") ("defendant" or the "Commissioner"), which found plaintiff not disabled and thus not entitled to disability insurance benefits ("DIB") under sections 216(i) and 223(d) of Title II of the Social Security Act ("the Act").  Before the court are the parties' cross-motions for judgment on the pleadings.  For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is GRANTED, and plaintiff's motion is respectfully DENIED.

## BACKGROUND

The factual and procedural background leading to this action is set forth in the administrative record. (ECF No. 18,

1

Administrative Transcript ("Tr.").) The court has reviewed the parties' respective motions for judgment on the pleadings and the administrative record.

The parties to this action have entered a Joint Stipulation of Relevant Facts detailing Plaintiff's medical history as well as his testimony at his administrative hearing. (ECF No. 17-1, Joint Stipulation of Relevant Facts.) The court incorporates the stipulated facts by reference, and details facts relevant to the parties' argument below.

## I. Procedural History

On May 8, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 29, 2015. (Tr. at 680.) Plaintiff's claim was denied on October 21, 2015. (Tr. at 786-797.)

Thereafter, plaintiff submitted a written request for a hearing on November 13, 2015. (Tr. at 798.) The hearing took place on April 16, 2018 in Queens, New York; Administrative Law Judge Robert R. Schriver ("ALJ") presided over the matter. (Tr. at 711-772.) Plaintiff was represented by attorney Herbert S. Forsmith. (*Id.*) Plaintiff, his wife, and a neutral vocational expert testified. (*Id.*)

On May 2, 2018, the ALJ determined that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security

2

Act. (Tr. at 677-710.) Plaintiff requested review of the ALJ's decision on May 7, 2018. (Tr. at 882-886.) The Appeals Council subsequently denied plaintiff's request for review on February 14, 2019. (Tr. at 1-7.) This action followed. (*See generally* ECF No. 1, Compl.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012). Rather, "'[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error.'" *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). If there is substantial evidence in the record to support the

3

Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Inquiry into legal error requires the court to ask whether "'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## DISCUSSION

### I. The Commissioner's Five-Step Analysis of Disability Claims

A claimant must be "disabled" within the meaning of the Act to receive disability benefits. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw*, 221 F.3d at 131–32. The impairment must be of "such severity" that the claimant is unable to do her or his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner prescribe a five-step sequential evaluation process for determining whether

4

a claimant meets the Act's definition of disabled. *See* 20 C.F.R. § 404.1520. The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find [her] disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4). If the answer at any of the previously mentioned steps is "no," the analysis stops and the ALJ must find that the claimant does not qualify as disabled under the Act.

"The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted). "However, [b]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* (internal quotation marks omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform her past relevant work [and considering her residual functional

5

capacity, age, education, and work experience], is able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)). If the Commissioner finds a combination of impairments, the Commissioner must also consider whether "the combined effect of all of [a claimant's] impairment[s]" establish the claimant's eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c); *see also id.* § 416.945(a)(2).

**II. The ALJ's Application of the Five-Step Analysis**

At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January 29, 2015, the alleged onset date. (Tr. at 682.)

At step two, the ALJ found that plaintiff had the following severe impairments: internal derangement of the cervical spine, without disc herniation; degenerative disc disease of the lumbar spine with disc herniation and multiple bulging discs;

6

osteoarthritis of the lumbar spine with radiculopathy; mild intellectual disability; a nonverbal learning disorder; and anxiety disorder. (Tr. at 682-83). The ALJ found also that plaintiff had the non-severe impairment of an unspecified shoulder strain—which did not meet the durational requirement of severity—as well as the non-severe impairments of dysplasia, tendinopathy, and mild degenerative chondrosis of the right hip—non-severe insofar as they had not been shown to cause more than minimal limitations in plaintiff's ability to perform basic work activities. (Tr. at 683.)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 202, Subpart P, App'x 1. (Tr. at 683-86.) The ALJ considered § 1.04 Disorders of the Spine; § 12.06 Anxiety Disorder; and § 12.05 Intellectual Disorder. (*Id.*)

The ALJ determined that plaintiff's spinal condition did not meet the relevant requirements of § 1.04: his cervical spine had not shown compromise of the nerve root nor had his lumbar spine shown either stenosis (required under § 1.04(C)) or positive straight leg raising testing in both the sitting and supine positions (required under § 1.04(A)). (*Id.*)

The ALJ further determined that the severity of plaintiff's mental impairments, considered separately and in combination,

7

did not meet or medically equal the criteria of § 12.06 or § 12.05. Regarding § 12.06, the ALJ determined that plaintiff's anxiety did not satisfy the paragraph "B" criteria, as he neither had one extreme limitation nor two marked limitations in the designated broad areas of functioning, which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (Tr. at 683.) The paragraph (B) criteria of § 12.06 are identical to the paragraph (B)(2) criteria of § 12.05. Step three is further discussed *infra*.

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (Tr. at 702.) Plaintiff's previous job as a doorkeeper required medium exertion while his previous job as a security guard required light exertion. (*Id.*) The ALJ determined that these exertional demands exceeded plaintiff's residual functional capacity. (*Id.*)

At step five, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform. (Tr. at 702.) The ALJ provided the vocational expert with plaintiff's age, education, work experience, and residual functional capacity; though the vocational expert testified that plaintiff would be unable to perform competitive work if plaintiff was off task more than 10% of the time (Tr. at 941-954), the vocational expert also testified that plaintiff could

8

undertake "representative sedentary unskilled occupations," including occupation as an addresser, a document preparer, and a food/beverage order clerk. (Tr. at 702-703.)

Based on the foregoing analysis, the ALJ found that plaintiff was not disabled from January 29, 2015 through the date of the decision. (Tr. at 703.)

**III. The ALJ Did Not Commit Error in His Analysis of Step Three**

Plaintiff argues that the ALJ's application of § 12.05 Intellectual Disorder at step three of the analysis is incorrect. (*See* ECF No. 10, Pl.'s Mot. J. ("Pl.'s Mot.").) To establish "significant deficits in adaptive functioning" under Listing 12.05B, plaintiff must demonstrate an extreme limitation in one, or a marked limitation in two, of the paragraph B criteria. 20 C.F.R. Part 404, Subpart P, App'x 1, Section 12.00H(3)(a) ("Under 12.05B2, we identify significant deficits in adaptive functioning based on whether there is extreme limitation of one, or marked limitation of two, of the paragraph B criteria.").[1]

---

[1] Plaintiff, despite acknowledging that the controlling version of the regulation for purposes of the ALJ's May 2, 2018 decision was promulgated on January 17, 2017, *see* 20 C.F.R. Part 404, Subpart P, App'x 1, Section 12.05B, incorrectly cites to cases based on an outdated standard in his brief. Pl. Mot. at 5, 10-12; *see* 81 Fed. Reg. 66138-01, 66138 n.1 (Sept. 26, 2016) ("[W]e will use these final rules on and after their effective date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.")

9

The § 12.05 criteria are:

  A. Satisfied by 1, 2, and 3 (see 12.00H):
    1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and
    2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and
    3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

  B. Satisfied by 1, 2, and 3 (see 12.00H):
    1. Significantly subaverage general intellectual functioning evidenced by a or b:
      a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
      b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) or 70 or below on an individually administered standardized test of general intelligence; and
    2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
      a. Understand, remember, or apply information (see 12.00E1); or
      b. Interact with others (see 12.00E2); or
      c. Concentrate, persist, or maintain pace (see 12.00E3); or
      d. Adapt or manage oneself (see 12.00E4); and
    3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpart P, App'x 1, § 12.05B.

The ALJ determined that plaintiff did not satisfy the (A)(1) and (A)(2) criteria and, in the alternative, determined that plaintiff did not satisfy the (B) criteria. (Tr. at 683-86.) Regarding § 12.05(B)(2)(a), the ALJ determined that

10

plaintiff had a moderate limitation in understanding, remembering, or applying information. (Tr. at 683-84.) The ALJ noted plaintiff's history of having a learning disorder, being placed in special education classes in school, and that he dropped out of school in 10th grade due to learning difficulties. (Tr. at 683.) Further, the ALJ noted that Dr. Kushner, a consultative examiner, found that plaintiff's recent and remote memory skills were only somewhat impaired; plaintiff's intellectual functioning seemed only somewhat below average; plaintiff had "up to a moderate limitation" in the ability to learn new tasks and to perform complex tasks under supervision; and that plaintiff had and could continue to manage the household funds with his wife. (Tr. at 683-84.) The ALJ concluded that these findings were consistent with the medical evidence as a whole. (Tr. at 684.) The court's independent review of the record reveals the same result.

The ALJ notes, and plaintiff argues, that the June 1, 2017 finding by Sanam Hafeez, Psy. D., and Michael Fodera, M.S., are inconsistent with the ALJ's own findings. School psychologists Dr. Hafeez and Mr. Fodera found that plaintiff's scores for memory "were falling into the 3rd, 1st, 0.3rd, and 0.1st percentiles." (*Id.*) The examiners and the ALJ noted the possibility that those low scores may have instead been the result of plaintiff's English language limitations, and should

11

be considered with reservation.  (*Id.*)  The ALJ postulated that such scores, if valid, "would essentially equate to an inability to even function in daily life."  (*Id.*)  Significantly, Dr. Hafeez and Mr. Fodera never arrive at such a conclusion.  (*Id.*)  The ALJ concluded that, given the medical evidence as a whole and given plaintiff's generally proficient memory during testimony, the scores were "likely" due to language difficulties rather than extreme limitations.  (*Id.*)  Dr. Hafeez and Mr. Fodera found that retesting in plaintiff's native language was warranted, though such testing never occurred.  (Tr. at 1205.)

Plaintiff testified that he had trouble remembering to perform his work-related duties while employed as a doorman and a security guard.  (*See generally* Tr. at 718-35.)  For instance, as a security guard, plaintiff forgot to do his rounds (Tr. at 720), forgot to close and lock doors (Tr. at 724), forgot that his supervisor told him not to take additional breaks, and thus continued to take several additional breaks (Tr. at 727), and forgot to listen to his self-recorded memos of his work instructions.  (Tr. at 726.)  Further, as a doorman, plaintiff forgot to open the door for tenants; arguably the crux of the position.  (Tr. at 731.)

Regarding § 12.05(B)(2)(b), the ALJ determined that plaintiff had a mild limitation in interacting with others, citing Dr. Kushner's findings that plaintiff had no limitations

12

in relating adequately with others. (*Id.*) The ALJ's determination was also based on plaintiff's self-completed Function Report, in which he mentioned spending time with others, chatting on the phone and over the computer, visiting with family, and going to church. (*Id.*)

Regarding § 12.05B(2)(c), the ALJ determined that plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. Dr. Kushner assessed that plaintiff's attention and concentration were somewhat impaired, since he could perform simple calculations but made errors counting backwards from 20 by 3s. (*Id.*) Dr. Ferrari reported that plaintiff had fair attention and concentration at their initial consultation, and later reported good attention and concentration. (*Id.* at 685-86.) Dr. Hafeez and Mr. Fodera's neuropsychological tests indicated that plaintiff had some delays in attention and concentration. (*Id.*)

Plaintiff argues that he manifests "extreme deficits" in concentrating, persisting, and maintaining pace. (Pl.'s Mot. at 10, 11.) However, plaintiff's testimony is the only evidence of such extreme deficits. (*See generally* Tr. at 711-72.) Plaintiff testified that he "couldn't focus in [his] proper mind" as a doorman, then lost his job as a security guard because he "didn't do [his] rounds" and "was not in [his] right mind." (Tr. at 719-720.) Plaintiff also claims, in his Function

13

Report, that he has problems paying attention and cannot finish what he starts. (Tr. at 698.) Finding that plaintiff's testimony was not supported by medical evidence, the ALJ did not afford plaintiff's testimony significant weight. (*Id.*)

Regarding § 12.05(B)(2)(d), the ALJ determined that plaintiff had a mild limitation in adapting or managing himself, noting that plaintiff "ha[d] consistently been able to maintain adequate daily functioning within his physical limitations," including caring for his child (of whom he has joint custody with his ex-wife), taking the subway, grooming himself, preparing simple foods, and attending his appointments. (*Id.*) The ALJ also referenced Dr. Kushner's opinion that plaintiff had "up to a moderate limitation" in the ability to maintain a regular schedule and appropriately deal with stress. (*Id.*) These findings are contrasted against the June 1, 2017 findings of Dr. Hafeez and Mr. Fodera, which indicated significant delays in areas related to adaptive functioning. (Tr. at 1192-1206.)

The ALJ thus found neither one extreme limitation nor two marked limitations across the aforementioned broad areas of functioning, and concluded that plaintiff did not satisfy § 12.05(B)(2) or § 12.06(B). (Tr. at 686.) Following this analysis, and taking the totality of plaintiff's physical and mental impairments into account, the ALJ found that plaintiff

14

had the residual functional capacity to perform a substantial range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (*Id.*) Plaintiff could sit for six hours and stand/walk for two hours in an eight-hour workday, as well as lift and carry ten pounds occasionally and less than ten pounds frequently. (*Id.*) Plaintiff could not tolerate exposure to respiratory irritants. (*Id.*) Due to his mental impairments, plaintiff would be limited to jobs consisting solely of simple, routine, and repetitive tasks. (*Id.*)

In coming to his conclusion regarding plaintiff's residual functional capacity, the ALJ accorded great weight to the opinions of Dr. Kushner, and accorded weight only to the extent that the opinions of Dr. Smith, Dr. Teli, and Dr. Hafeez and Mr. Fodera were "consistent with the medical evidence and clinical findings of the record." (Tr. at 700-01.) The ALJ afforded no weight to the opinions of Dr. Lattuga. (Tr. at 700.)

Plaintiff's argument rests largely on the results of Dr. Hafeez and Mr. Fodera, and his own testimony. However, as demonstrated *supra,* the record supports the ALJ's interpretation of Dr. Hafeez and Mr. Fodera's opinion. The examiners themselves expressed doubt about the validity of the results, saying that they should be considered "with caution" and recommended retesting in plaintiff's native language. (Tr. at 1203.) Their finding that plaintiff's I.Q. was at an extremely

15

low level, such that ordinary daily functioning would not be possible, is unsupported by the record.  The plaintiff's testimony and self-completed Function Report alone cannot support a finding of an extreme limitation.  For this reason and the reasons explained *supra*, the ALJ properly found that plaintiff is not disabled within the meaning of the statue.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is respectfully DENIED and the Commissioner's cross-motion for judgment on the pleadings is GRANTED. The Clerk is directed to enter judgment, dismissing the case.

**SO ORDERED.**

Dated:    May 30, 2020
          Brooklyn, New York

                                        _____/s/_____
                                        **HON. KIYO A. MATSUMOTO**
                                        United States District Judge
                                        Eastern District of New York